**BRYAN CAVE LEIGHTON PAISNER LLP**
Anne Redcross Beehler, California Bar No. 312125
Traci G. Choi, California Bar No. 307245
Makaela O'Connell, California Bar No. 335647
1920 Main Street, Suite 1000
Irvine, California  92614-7276
Telephone:   (949) 223-7000
Facsimile:   (949) 223-7100
E-Mail:      anneredcross.beehler@bclplaw.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

| | |
|---|---|
| DR. ESAM YUSUF ABDULKARIM JANAHI, an individual; and INFRA CAPITAL INVESTMENTS PJSC, f/k/a "ABU DHABI INVESTMENT HOUSE, PJSC," a private joint-stock company<br><br>        Plaintiffs,<br><br>    vs.<br><br>IMAAD SHAH ZUBERI, an individual; WEST HOLLYWOOD 11 LLC, a California limited liability company; USCARES LLC a/k/a "U.S. CARES, LLC" and "AMERICA CARES," a Delaware limited liability company; AVENUE VENTURES, LLC a/k/a "AVENUE VENTURES," a Delaware limited liability company; AVENUE CAPITAL GROUP, INC., a California corporation; AVENUE INVESTMENT SERVICES INC., a California corporation; AVENUE VENTURES, an unincorporated association; and DOES 1 to 10, inclusive<br><br>        Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>(1) FRAUD<br>(2) CONVERSION<br>(3) FRAUDULENT TRANSFER<br>(4) UNFAIR BUSINESS PRACTICES<br>(5) BREACH OF CONTRACT<br><br>DEMAND FOR JURY TRIAL |

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA  92614-7276

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614-7276

Plaintiffs DR. ESAM YUSUF ABDULKARIM JANAHI ("**EJ**") and INFRA CAPITAL INVESTMENTS PJSC (formerly known as "ABU DHABI INVESTMENT HOUSE, PJSC") ("**Infra Capital**") (collectively, "**Plaintiffs**"), by and through their attorneys, Bryan Cave Leighton Paisner LLP, as and for their Complaint against Defendants IMAAD SHAH ZUBERI, an individual, WEST HOLLYWOOD 11 LLC, a California limited liability company, USCARES LLC a/k/a "U.S. CARES, LLC" and "AMERICA CARES," a Delaware limited liability company, AVENUE VENTURES, LLC a/k/a "AVENUE VENTURES," a Delaware limited liability company, AVENUE CAPITAL GROUP, INC., a California corporation, AVENUE INVESTMENT SERVICES INC., a California corporation, AVENUE VENUTRES, an unincorporated association, and DOES 1 to 10 (collectively, "**Defendants**") allege as follows:

## PARTIES

1.     EJ is an individual residing in the United Arab Emirates ("**UAE**").

2.     Infra Capital is a private joint-stock company organized in the UAE with a principal place of business in the UAE.

3.     Upon information and belief, Defendant Imaad Shah Zuberi ("**Zuberi**") is an individual residing in Los Angeles, California.  On or about October 22, 2019, a criminal case was filed against Zuberi, related to the conduct discussed in this Complaint.  Zuberi pleaded guilty to Foreign Agents Registration Act violations, tax evasion, and Federal Election Campaign Act violations, and was recently sentenced to a 12-year prison sentence.  *See United States of America v. Imaad Shah Zuberi*, Case No. 19-cr-00642-VAP.

4.     Upon information and belief, Defendant West Hollywood 11 LLC ("**WeHo 11**") was a California limited liability company, which according to the California Secretary of State website was cancelled on or about April 27, 2020.

1    WeHo 11 had a principal place of business at 10166 Rush Street, South El Monte,
2    California 91733.

3        5.      Upon information and belief, Defendant USCares LLC, also known as
4    "U.S. Cares, LLC" and "America Cares" (hereinafter, "**USCares**") is a Delaware
5    limited liability company with a principal place of business in Los Angeles,
6    California.

7        6.      Upon information and belief, Defendant Avenue Ventures, LLC
8    ("**Avenue Ventures**") also known as "Avenue Ventures" is a Delaware limited
9    liability company with a principal place of business in Los Angeles, California.

10       7.      Upon information and belief, Defendant Avenue Capital Group, Inc.
11   ("**ACG Inc.**") is a California corporation with a principal place of business at 10166
12   Rush Street, South El Monte, California 91733.

13       8.      Upon information and belief, Defendant Avenue Investment Services
14   Inc. ("**AIS Inc.**") is a California corporation with a principal place of business at
15   10166 Rush Street, South El Monte, California 91733.

16       9.      Upon information and belief, Defendant "Avenue Ventures" ("**AV**") is
17   an unincorporated association controlled by Zuberi, with a principal place of
18   business in Los Angeles, California.  "AV," "AIS Inc.," "ACG Inc." and "Avenue
19   Ventures" shall collectively be referred to as the "**Avenue Ventures entities**."

20       10.     Plaintiffs sue as DOES 1-10 persons or entities whose identities are not
21   yet known to Plaintiffs, who will seek leave of Court to substitute the true names of
22   the defendants when they become known.  Upon information and belief, DOES 1-10
23   contributed to and are jointly and severally responsible for the wrongs hereinafter
24   alleged in the Complaint.  Upon information and belief, DOES 1-10 include entities
25   created by Zuberi, or persons retained by Zuberi, to conceal Zuberi's fraudulent
26   conduct and to fraudulently transfer all or portions of the amounts at issue in this
27   case to accounts created and maintained for Zuberi's benefit.

28

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614-7276

11.     Plaintiffs are informed and believe and thereon allege that, at all times mentioned in this Complaint, each Defendant was the agent of the other Defendants and in doing the things hereinafter alleged was acting within the course and scope of its authority as such agent and with the permissions and consent of each of the other Defendants.

## JURISDICTION AND VENUE

12.     This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because complete diversity exists between Plaintiffs and Defendants.  Plaintiffs are citizens of the UAE, while Defendants are citizens of California and/or Delaware. The amount in controversy exceeds $75,000.

13.     Venue is proper in this Court because Defendants reside or have a principal place of business in this district.  In addition, a substantial portion of the events and a substantial portion of the property at issue is situated in this district.

## GENERAL FACTUAL ALLEGATIONS

I.     **ZUBERI MEETS EJ AND ENTICES PLAINTIFFS TO INVEST MILLIONS OF DOLLARS WITH HIM AND HIS COMPANIES**

14.     In 2012, EJ met Zuberi through a mutual friend.  Almost immediately, Zuberi peppered EJ with stories about his influential contacts, which included United States presidents, senators, other world leaders, and well-known businesspeople.

15.     During their initial meeting in 2012, Zuberi also introduced EJ and his company, Abu Dhabi Investment House, PJSC (which is now known as Infra Capital) to Zuberi's company, Avenue Ventures.  Zuberi promoted Avenue Ventures, promising that he and the company had the potential to earn EJ millions in profits.

16.     Zuberi boasted of his business connections during the initial meeting and thereafter, in an effort to entice EJ and Infra Capital to invest money with him.

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614-7276

For example, during their relationship, Zuberi frequently forwarded e-mails to EJ and associates of EJ, including EJ's attorney, Paul McKendry, inviting EJ to dinners and events with influential persons, such as Senator John McCain, King Mohammad VI of Morocco, the Clinton family, and several ambassadors.  On numerous occasions, Zuberi boasted of his status as an early investor in Tesla Motors, Inc., frequently sending EJ information about the latest Tesla he owned as a result of his early investor status.

A. **Zuberi's Alleged Investments in North African and Middle Eastern Projects**

17.     On or about September 8, 2012, EJ made his first investment of $45,000 with Zuberi.  Zuberi promised to invest EJ's funds into a BMW distributor in Libya, either through a new company Zuberi would create or through "an existing organization" with which Zuberi had connections.

18.     Throughout the fall of 2012, Zuberi sent EJ e-mail correspondence discussing investment opportunities in North Africa, including the BMW distributor, and secured an additional $250,000 from EJ related to these investments, which promised significant returns.

19.     Also during the fall of 2012, Zuberi obtained funds from EJ for purported investment opportunities with (i) Tunis Financial Harbour, North Africa's first offshore financial center at Tunis Bay; (ii) a hotel chain in Jordan; (iii) development of the Royal Ranches Marrakech, a luxury equestrian resort in Morocco; and (iv) Energy City in Libya, an energy and electricity production and import operation.

20.     In February and March of 2013, Zuberi advertised additional investment opportunities in North Africa.  Zuberi promised EJ that he would use his funds to invest in new opportunities to "train the Presidential Guards in Libya, among others," to open a Volkswagen distribution in Libya and other North African

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614-7276

countries, and to start franchises throughout North Africa.  Based on these conversations about additional investment opportunities in North Africa and promises of significant returns from Zuberi, EJ provided an additional $2.1 Million (US) to Zuberi.

21.  Zuberi, individually and through his various Avenue Ventures entities, thereafter kept up the charade of providing legitimate investment opportunities to EJ – sending him a flurry of e-mails in April 2013 regarding the purported status of his investments.

22.  For example, in April 2013, he sent an e-mail to his supposed assistant, "Renee Wu," asking her to send EJ "a list of franchises for Libya and/or all over Africa…"  Unbeknownst to EJ at the time, Renee Wu was not a real person, but as was later revealed in the criminal case filed by the United States against Zuberi at the end of 2019, "Ms. Wu" was a made-up alter ego of Zuberi himself.  Zuberi, through the fictitious Ms. Wu, reported to EJ that "Imaad has Robert working on Seven-11 and a few other mentioned below…."

23.  EJ has not to date received any return on any of the investments in the various projects discussed above.  Nor has Zuberi provided EJ with a refund of his investment in any of the above projects.

**B.  EJ's Investment in USCares.**

24.  At the beginning of 2013, Zuberi, individually and through the Avenue Ventures entities, began promoting an investment in USCares.

25.  According to Zuberi and Avenue Ventures, the purpose of USCares was to obtain an Office of Foreign Asset Control ("**OFAC**") license for USCares to distribute medicine, food, and other humanitarian aid to Iran.  Zuberi promoted the investment to several individuals, and stated that their investments would be used for, among other things, the costs of obtaining the license, setting up the entity, and legal fees.  Zuberi and Avenue Ventures promised significant returns on the

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA  92614-7276

investment, as USCares would be a one of a kind entity providing humanitarian services to Iran.

26.     EJ provided an initial investment of approximately $2.5 Million in USCares from April 2013 through 2014.

27.     Additionally, in and around April 2015, EJ, through Infra Capital, purchased the interest of Aqili Group LLC, another investor in USCares for $900,000.

28.     Recently, through filings by the United States Government in connection with the criminal action against Zuberi, EJ learned that Zuberi took the entirety of the over $3.4 Million investment and remitted it to his own personal accounts.

29.     According to filings in Zuberi's criminal case, Zuberi used EJ's funds to invest in Zuberi's own personal brokerage accounts and to pay off creditor card debt.  Zuberi concealed from EJ that he was using EJ's own funds for Zuberi's personal investments and debt repayment.

30.     Specifically, the Government stated in the criminal action that, on February 21, 2014, Zuberi took a portion of EJ's investment in USCares and used it to pay personal credit card bills.  Similarly, on March 11, 2014, Zuberi took EJ's funds for the USCares investment and wired it into his personal brokerage accounts.

31.     While Zuberi has returned portions of other investors' investments in USCares, Zuberi has not returned any of EJ's investment in USCares.

**C.** **Zuberi's Consultancy Services In Connection with the Al Areen Palace & Spa.**

32.     Decades ago, EJ became involved with the development of a luxury spa, wellness center, housing, and recreational facilities in Bahrain, known as the Al Areen Palace & Spa. ("**Al Areen**").  Al Areen's development had long been in existence, having been inaugurated in 2004 – eight years before EJ met Zuberi.

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614-7276

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA  92614-7276

33.     Over the years, additional phases of Al Areen were completed.  For instance, a five star hotel was constructed, comprised of over 100 desert villas and the largest spa and wellness center in the Gulf.  An additional phase involved an outdoor water park and luxury housing developments.

34.     In and around 2011 and 2012, a specialist hospital and medical zone was also created.  EJ, through his company EJ Capital, sought to develop Al Areen as a state-of-the-art medical zone, offering specialist treatments locally and providing employment opportunities to Bahrain.

35.     Zuberi told EJ that he had excellent contacts within the medical research communities, and over the years, presented multiple opportunities for new diagnostic equipment and techniques.

36.     Zuberi, through Avenue Ventures, thereafter agreed to provide consultancy services in connection with Al Areen in order to engage key figures and professionals to assist with its development and operations.

37.     In and around April 2013, Avenue Ventures decided itself to invest in Al Areen.

38.     EJ recently discovered in connection with the criminal action against Zuberi that amounts totaling over $800,000, which were supposed to be used for consultancy services in connection with the development of Al Areen, instead were wrongfully kept by Zuberi for himself and family members.

39.     For example, on or about August 4, 2015, Zuberi used consultancy fees to buy real estate in the name of one of Zuberi's real estate limited liability companies.

**D.   Investments in Debt Dog and Proa Medical.**

40.     In 2013, EJ invested $2.5 Million with Zuberi for an interest in a company called Debt Dog, Inc., a financial services business based in New York,

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614-7276

1   New York, which according to Zuberi, offered affordable financing for borrowers.

2   Zuberi indicated that he was on the board of directors of Debt Dog.

3      41.     Despite EJ's significant investment in Debt Dog, EJ never received any

4   return on the investment.  Nor has Zuberi refunded any portion of the investment in

5   Debt Dog.

6      42.      In 2013, EJ invested $500,000 with Zuberi in an interest in a company

7   called Proa Medical, a company that provided innovative medical devices.  Zuberi

8   promised EJ that his son would be a stockholder of Proa Medical.  Nevertheless,

9   neither EJ nor his son received any return on their investment in Proa Medical.

10     43.     Zuberi also has not provided any documentation of stock ownership in

11  either Debt Dog or Proa Medical, indicating that Zuberi has stolen the $3 Million

12  dollars that was supposed to be invested in these companies, as he did with EJ's

13  other investments.

14  **E.  Investment in the West Hollywood Property.**

15     44.     In and around December 2015, Zuberi began contacting EJ and his

16  associates, including Mr. McKendry, about an investment opportunity to acquire a

17  property for development in West Hollywood, Los Angeles.

18     45.     The property address for the West Hollywood project is 1016 N. Martel

19  Ave., West Hollywood, CA 90046.

20     46.     Zuberi told EJ that the opportunity was to invest in the development of

21  condominium properties, in the highly desirable West Hollywood neighborhood.

22     47.     According to a slide deck presentation provided by Zuberi, the units

23  would be "high-end" with luxury fixtures and features.   The units would "be

24  designed to exploit land use while embellishing the WeHo look and feel."

25     48.     Some of the properties would feature rooftop decks and gardens, with

26  three stories, and two-car garages.

27

28

49.     The projected financial returns, according to Zuberi, included a "90% ROI," with an interest in a "trophy" property and development.

50.     The investment was to be completed through purchase of a membership interest in WeHo 11, a single purpose entity purportedly created by Zuberi for the project.

51.     In and around January 2016, WeHo 11 and Infra Capital signed a joint escrow agreement, in which Infra Capital would contribute $2.5 Million to the West Hollywood project.  In return, Infra Capital would receive an interest in WeHo 11, and ultimately, the profits from the development.

52.     On or about January 25, 2016, Zuberi wrote:  "We can probably sell these condos at better prices in China or Middle East because if you buy $1 million property then you can apply for residency i.e. green card. I don't know the exact terms and conditions but this what is done. The prices at which these can be sold now is about $1.6 to $1.9 million. I am sure in China and Middle East the price would be higher."

53.     On or about January 28, 2016, Infra Capital provided the $2.5 Million investment by wire transfer for an interest in WeHo 11.

54.     For many months thereafter, through 2017, EJ and Infra Capital attempted to find out further information regarding the status of the development of the property, and requested financial information and an accounting from WeHo 11.

55.     In response to the inquiries, Zuberi stalled, stating in several e-mails that the information was forthcoming and that there would be delays due to Zuberi's hectic travel schedule.

56.     This past month, following the filing of the criminal case against Zuberi, EJ and Infra Capital learned that Zuberi did not invest any of the $2.5 Million in the West Hollywood project.  EJ and Infra Capital recently discovered

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614-7276

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614-7276

1   that almost immediately, Zuberi took Infra Capital's investment and transmitted it to

2   personal accounts for his own benefit.

3       57.   According to public records, neither Zuberi nor WeHo 11 currently

4   owns the property.  Moreover, in 2020, Zuberi dissolved WeHo 11.

5       58.   No notice was provided to Infra Capital of the dissolution of WeHo 11,

6   and Infra Capital and EJ only recently learned of the dissolution following the filing

7   of the criminal case against Zuberi.

8       59.   While Zuberi discussed returning a portion of the WeHo11 investment

9   to Infra Capital, Infra Capital did not receive any return of its investment.

10   II.   **EJ AND ZUBERI AGREE THAT ZUBERI WILL, AT A MINIMUM,**

11       **RETURN 75% OF PLAINTIFFS' INVESTMENTS.**

12       60.   During their relationship, EJ and Zuberi discussed an arrangement in

13   which Zuberi would repay EJ if the investments did not provide the returns

14   promised by Zuberi.

15       61.   If Zuberi's promised returns did not come to fruition, Zuberi stated on

16   multiple occasions that he would repay EJ 75% of the amounts invested, and retain

17   the remaining 25% for his efforts (the "**75/25 Arrangement**").  At the time EJ and

18   Zuberi discussed the 75/25 Arrangement, EJ was not aware that Zuberi did not

19   bother to invest the amounts provided by EJ and Infra Capital.

20       62.   EJ agreed to the 75/25 Arrangement with Zuberi.

21       63.   In addition, Zuberi and EJ agreed that the 75% of the investments owed

22   to EJ would be secured by liens on Zuberi's and his companies' real estate holdings.

23       64.   The 75/25 Arrangement was documented in various writings, including

24   by way of example, in e-mail correspondence from Zuberi dated April 21, 2018.

25       65.   In addition, Zuberi recently acknowledged the 75/25 Arrangement in

26   his court filings in the criminal case.  For instance, Zuberi states in a sentencing

27   memorandum filed on or about May 18, 2020 that only 25% of the funds remitted

28

by EJ counted as "income" under the tax laws because "he had an obligation to repay 75% if the related project failed." (Zuberi Sentencing Memorandum, dated May 18, 2020, at 19:15-19). Zuberi characterizes the 75/25 Arrangement as "75% clawback arrangement," stating the agreement rendered 75% of the payments "not income." (*Id.*, at 19:20-21).

66.   In other filings in his criminal case, Zuberi represented that EJ and Infra Capital have liens on his real property assets, which prohibits Zuberi from selling the assets to satisfy payments to the U.S. Government in connection with tax crimes to which he pleaded guilty.

67.   Accordingly, while Zuberi and EJ did not document the 75/25 Arrangement in a formal agreement, it was acknowledged by Zuberi in writing in numerous e-mails from Zuberi and in his criminal court submissions.

III.   **<u>UNBEKNOWNST TO EJ, ZUBERI TRANSFERS EJ'S INVESTMENTS INTO PERSONAL ACCOUNTS FOR ZUBERI'S OWN BENEFIT.</u>**

68.   On or about October 22, 2019, Zuberi pleaded guilty to Foreign Agents Registration Act ("**FARA**") violations, tax evasion, and Federal Election Campaign Act ("**FECA**") violations.

69.   On that same day, an Information was filed by the U.S. Government in the United States District Court for the Central District of California (Hon. Virginia A. Phillips), commencing the criminal case against Zuberi.

70.   It was not until the criminal case that EJ first learned of Zuberi's fraudulent activities and conversion with respect to the USCares investment.

71.   The Information alleges, in key part, that the investors in USCares wired a total of $7 Million to Zuberi, but that Zuberi "did not transfer any of the funds received from U.S. Cares investors into a U.S. Cares capital account as required by the operating agreement. Instead, from on or about December 5, 2013

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA  92614-7276

through on or about October 12, 2015, defendant ZUBERI used over 90% of the investor funds to (a) purchase real estate in the names of various limited liability companies owned entirely by himself and his spouse ("IZ/WR Real Property LLCs"), (b) pay down mortgages owed by IZ/WR Real Property LLCs, (c) remodel property owned by IZ/WR Real Property LLCs, (d) invest in brokerage accounts in the names of defendant ZUBERI and his spouse, (e) donate $250,000 to a non-profit organization established by a former high-ranking elected official, and (f) pay down personal credit card debt, most of which was incurred to pay campaign contributions and travel, meal, entertainment, and personal expenses.  Out of approximately $7,000,000 wired to defendant ZUBERI by U.S. Cares investors, less than $250,000 was spent in furtherance of defendant ZUBERI's advertised business purpose…." (Information, at ¶¶ 67-68).

72.     Following the filing of the criminal case against Zuberi, EJ began following the criminal proceeding and learned that additional misconduct occurred with respect to his other investments as well.

73.     For instance, through the Government's sentencing briefing, EJ learned that Zuberi's alleged assistant, Renee Wu, was not a real person, but was instead an "alter ego" of Zuberi -- indicating that no work was performed on any of the Middle Eastern and North African investments discussed above.

74.     Over the last month, EJ also learned that Zuberi took the entirety of the West Hollywood investment for himself.  EJ learned that another individual, with no apparent connection to Zuberi purchased the West Hollywood property and has developed it.  EJ learned that almost immediately after Infra Capital provided the funds for the West Hollywood project, Zuberi improperly wired the funds into his own personal accounts.

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA  92614-7276

IV.   **ZUBERI FAILS TO RETURN ANY OF PLAINTIFFS'
INVESTMENTS.**

42.    After learning of Zuberi's misconduct in connection with the criminal case against him, EJ and Infra Capital retained counsel to assist in recuperating their losses.

43.    On or about Monday, April 26, 2021, EJ and Infra Capital, through counsel, made a demand on Zuberi, through his counsel, to return EJ's and Infra Capital's funds.

44.    To date, Zuberi has not returned any of the funds, necessitating the filing of this action.

**FIRST CAUSE OF ACTION**

**FRAUDULENT MISREPRESENTATIONS**

**(As against All Defendants)**

75.    Plaintiffs repeat and incorporate all of the foregoing paragraphs of the Complaint as if fully set forth herein.

76.    Zuberi made repeated misrepresentations to EJ, Infra Capital, and agents of EJ and Infra Capital that Zuberi would invest Plaintiffs' funds in connection with the various projects set forth above.

77.    For example, and as set forth more fully above, Zuberi stated in and around December 2015 that he had an investment opportunity in connection with a property located in West Hollywood, Los Angeles, with the following address: 1016 N. Martel Ave., West Hollywood, CA 90046.

78.    Thereafter, Zuberi provided a slide deck and financial material, indicating that the investment would involve the development of 11 condominium units in West Hollywood, and that there would be a large "90% ROI," with an interest in a "trophy" property and development.

79.     Zuberi created the WeHo 11 entity, and represented to Plaintiffs that it was created to invest in the West Hollywood property.

80.     In and around January 2016, WeHo 11 and Infra Capital signed a joint escrow agreement, in which Infra Capital would contribute $2.5 Million to the West Hollywood project.  Zuberi represented that in return, Infra Capital would receive an interest in WeHo 11, and ultimately, the profits from the development.

81.     On or about January 25, 2016, Zuberi wrote: "We can probably sell these condos at better prices in China or Middle East because if you buy $1 million property then you can apply for residency i.e. green card. I don't know the exact terms and conditions but this what is done. The prices at which these can be sold now is about $1.6 to $1.9 million. I am sure in China and Middle East the price would be higher."

82.     In fact none of the foregoing representations made to Plaintiffs (including that they would have a share of the property purchased, that the property would be developed by Zuberi into luxury condominiums, or that Plaintiffs would receive large returns and 90% ROI on their investment, with a "trophy" property), were true.

83.     Unbeknownst to Plaintiffs at the time, Zuberi intended all along to keep the investment money for his own personal use.

84.     Zuberi knew that his representations about the West Hollywood project were patently false and that he would keep Plaintiffs' investment all along.

85.     On or about January 28, 2016, in reliance on the representations made by Zuberi, individually and through the entity he created (WeHo11), Infra Capital provided the $2.5 Million investment by wire transfer for an interest in WeHo 11.

86.     Plaintiffs recently discovered this past month that almost immediately, Zuberi took the investment funds and wired them into his own personal accounts for his use.

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614-7276

87.     Zuberi never made an effort to purchase the property, and in 2020, cancelled WeHo 11 without providing any notice to Plaintiffs, despite their repeated requests for information regarding the status of the development.

88.     As a result, Plaintiffs suffered substantial damage including the loss of the $2.5 Million investment.

89.     Similarly, Zuberi, individually and through the Avenue Ventures entities, made false representations concerning the USCares project.

90.     Specifically, at the beginning of 2013, Zuberi, individually and through Avenue Ventures, stated that he would use EJ's funds to obtain an OFAC licenses so that USCares could distribute medicine, food, and other humanitarian aid to Iran. Zuberi and Avenue Ventures promised significant returns on the investment – indicating in early 2013 that USCares would be a one of a kind entity providing humanitarian services to Iran.

91.     In fact, Zuberi and Avenue Ventures intended all along that Zuberi would take the investment for themselves, without providing any benefit to Plaintiffs.

92.     Zuberi knew that his representations about the USCares project were patently false and that he would keep Plaintiffs' investment all along.

93.     Based on the misrepresentations, EJ provided an initial investment of approximately $2.5 Million from April 2013 through 2014.

94.     Additionally, in and around April 2015, EJ, through Infra Capital, purchased the interest of Aqili Group LLC, another investor in USCares for $900,000.

95.     Recently, through filings by the Government in connection with the criminal action against Zuberi, EJ discovered that Zuberi took the entirety of the over $3.4 Million investment and remitted it to personal accounts.  According to filings in Zuberi's criminal case, Zuberi used EJ's funds to invest in his Zuberi's

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614-7276

own personal brokerage accounts and to pay off creditor card debt.  Zuberi concealed from EJ that he was using EJ's own funds for Zuberi's personal investments and debt repayment.

96.   Specifically, the Government stated in the criminal action that on February 21, 2014, Zuberi took a portion of EJ's investment in USCares and used it to pay personal credit card bills.  Similarly, on March 11, 2014, Zuberi took EJ's funds for the USCares investment and wired it into his personal brokerage accounts.

97.   While Zuberi has returned portions of other investors' investments in USCares to them, Zuberi has not returned any of EJ's investment in USCares.

98.   There are several other instances in which Zuberi and the Avenue Ventures entities made misrepresentations to Plaintiffs regarding their investments. As set forth more fully above, Zuberi and Avenue Ventures represented that they would invest EJ's funds in Debt Dog, Proa Medical, projects throughout the Middle East and North Africa (including a BMW distribution, medical facilities), and would provide services for Al Areen.  In reliance, EJ and Infra Capital provided the millions of dollars detailed above to Zuberi.  All of these representations were untrue, as Zuberi took the investment for the benefit of himself and family members, with no intention of providing Plaintiffs any return.

99.   As a result of the foregoing misconduct, Plaintiffs have suffered substantial damages in an amount not less than $10.8 Million.

100.  In addition, Plaintiffs are entitled to punitive damages based on Defendants' fraudulent, oppressive and malicious misconduct, aimed to deprive Plaintiffs of their property.

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614-7276

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614-7276

## SECOND CAUSE OF ACTION

## FRAUDULENT TRANSFER

**(Imaad Shah Zuberi; WeHo 11; Avenue Ventures entities; Does 1-10)**

101.    Plaintiffs repeat and incorporate all of the foregoing paragraphs of the Complaint as if fully set forth herein.

102.   Zuberi, WeHo 11, the Avenue Ventures entities, and Does 1-10 engaged in multiple violations of the California Uniform Voidable Transfers Act (Cal. Civ. Code § 3439 *et seq.*).

103.   Specifically, on or about January 28, 2016, Infra Capital, as an investor in WeHo 11, wired $2.5 Million for the purchase and development of the West Hollywood property.  Almost immediately, the money was taken from WeHo 11 and placed into accounts controlled by Zuberi.

104.   The transfer from WeHo 11 to Zuberi was made with actual intent to hinder and defraud Infra Capital.  WeHo 11 had no other assets, Zuberi was an insider of WeHo 11, Zuberi concealed the transfer and did not disclose it to Plaintiffs, and in 2020, Zuberi cancelled WeHo 11.

105.   As a result of the transfer to Zuberi of the investment funds, Infra Capital (and consequently EJ) suffered harm because the transfer rendered WeHo 11 assetless.  In addition, the transfer was undertaken to deprive Plaintiffs of their right to their investment and any returns on their investment.

106.   Similarly, from April 2013 through 2014, EJ provided investments of $1.2 Million in USCares.  Additionally, in and around April 2015, EJ, through Infra Capital, purchased the interest of Aqili Group LLC, another investor in USCares for $900,000.

107.   Transfers of the amounts invested for USCares were made to personal brokerage accounts to Zuberi and to pay off credit card debts.

108.   In addition, as indicated in the filings by the Government in the criminal case, amounts from other investors were also transferred to accounts belonging to Zuberi, leaving USCares assetless.

109.   The transfers to Zuberi regarding USCares were made with actual intent to hinder and defraud EJ.  USCares had no other assets, Zuberi was an insider of USCares, and Zuberi concealed the transfers.

110.   As a result of the transfer to Zuberi of the investment funds, EJ suffered harm because the transfer rendered USCares assetless.  In addition, the transfers were undertaken to deprive EJ of his right to his investment and any returns on the investment.

111.   In addition, Plaintiffs are entitled to punitive damages based on Defendants' fraudulent, oppressive and malicious misconduct, aimed to deprive Plaintiffs of their property.

## THIRD CAUSE OF ACTION
## CONVERSION
### (As against Imaad Shah Zuberi; Does 1-10)

112.   Plaintiffs repeat and incorporate all of the foregoing paragraphs of the Complaint as if fully set forth herein.

113.   Zuberi and Does 1-10 (*i.e.*, companies set up by Zuberi for his benefit to hold real estate and other assets wrongfully purchased with Plaintiffs' funds) have wrongfully exercised dominion and control over the property of Plaintiffs, without Plaintiffs' consent.

114.   Plaintiffs own and have a right to all of the funds provided to Zuberi in connection with their investments in the various projects discussed above.

115.   As described more fully above, Zuberi and Does 1-10 wrongfully converted Plaintiffs' funds by retaining them and using them to buy real property

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA  92614-7276

COMPLAINT

and other assets to benefit Zuberi and his family.  Zuberi and Does 1-10 refuse to return the funds, despite demands by Plaintiffs.

116.   As a result, Plaintiffs have suffered damages in an amount not less than $10.8 Million.

117.   In addition, Plaintiffs are entitled to punitive damages based on Defendants' fraudulent, oppressive and malicious misconduct, aimed to deprive Plaintiffs of their property.

### **FOURTH CAUSE OF ACTION**
### **UNFAIR BUSINESS PRACTICES**
### **(Against All Defendants)**

118.   Plaintiffs repeat and incorporate all of the foregoing paragraphs of the Complaint as if fully set forth herein.

119.   Through the conduct set forth above, each of the Defendants engaged in fraudulent and unfair business practice, namely: (i) misleading investors (including Plaintiffs) that their funds were being used for legitimate business investments, when in fact Defendants were wrongfully converting the funds for their own benefit; (ii) concealing Defendants' wrongful use of the investment funds by making further misrepresentations to Plaintiffs and others about the status of their investments; and (iii) wrongfully converting Plaintiffs' (and other's) investment funds for Zuberi's and his family's own personal use.

120.   As a result of Defendants' unfair and fraudulent business practices, Plaintiffs have suffered substantial lost property and injury, in an amount not less than $10.8 Million.

121.    In addition, Plaintiffs are entitled to punitive damages based on Defendants' fraudulent, oppressive and malicious misconduct, aimed to deprive Plaintiffs of their property.

**FIFTH CAUSE OF ACTION**

**BREACH OF CONTRACT**

**(As Against Defendant Imaad Shah Zuberi)**

122.   Plaintiffs repeat and incorporate all of the foregoing paragraphs of the Complaint as if fully set forth herein.

123.   Plaintiffs plead this cause of action in the alternative to the foregoing causes of action.

124.   As conceded in his criminal case filings, Zuberi and Plaintiffs agreed that to the extent any of the investments by Zuberi on behalf of Plaintiffs were not successful, Zuberi would repay Plaintiffs 75% of the amounts invested.

125.   In addition, Zuberi represented that Plaintiffs would have a lien on his real estate holdings, as reflected in Zuberi's criminal case submissions.

126.   The 75/25 Arrangement was documented in e-mails with Zuberi.

127.   Despite demand by Plaintiffs to return 75% of the amounts invested, Zuberi has failed to pay the amounts owed to Plaintiffs, and as a result, is in breach of his contract with Plaintiffs.

128.   Plaintiffs have fully performed under the terms of the parties' agreement, or have been excused from performance due to Defendant's breach.

129.   As a result, Plaintiffs have suffered damages in an amount not less than $7,692,681.90.

**PRAYER FOR RELIEF**

Plaintiffs pray for judgment against Defendant as follows:

1.     On the first through fourth causes of action, for damages in an amount not less than $10.8 Million.

2.     Alternatively, on the fifth cause of action, for damages in an amount not less than $7,692,681.90.

3.     On the first through fourth causes of action, for punitive damages as a

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614-7276

1    result of Defendants' fraudulent, oppressive and malicious misconduct.

2          4.    For costs of suit incurred; and

3          5.    For such other and further relief as the Court may deem just and proper.

4                              **JURY DEMAND**

5                      Plaintiffs demand a jury trial.

6

7    Dated:  May 11, 2021                **BRYAN CAVE LEIGHTON PAISNER LLP**

8

9                              By:  _Anne Redcross Beehler_

10                                  Anne Redcross Beehler
                                   Attorneys for Plaintiffs
11                                 DR. ESAM YUSUF ABDULKARIM
                                   JANAHI; and INFRA CAPITAL
12                                 INVESTMENTS PJSC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BRYAN CAVE LEIGHTON PAISNER LLP
1920 MAIN STREET, SUITE 1000
IRVINE, CA 92614-7276