UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES-GENERAL</u>

Case No.: **CV 21-3975-VAP (PLAx)**　　　　　　　　　　　　　Date: <u>February 23, 2022</u>

Title:　<u>Esam Yusuf Abdulkarim Janahi, et al. v. Imaad Shah Zuberi, et al. (and related counterclaim)</u>

==========================================================================

**PRESENT:**　**THE HONORABLE**　　**PAUL L. ABRAMS**
　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**

<u>　　Christianna Howard　　</u>　　　　<u>　　N/A　　</u>　　　　<u>　　N/A　　</u>
　　　Deputy Clerk　　　　　　　　Court Reporter / Recorder　　　　Tape No.

**ATTORNEYS PRESENT FOR PLAINTIFF(S):**　　　**ATTORNEYS PRESENT FOR DEFENDANT(S):**
　　　　　　NONE　　　　　　　　　　　　　　　　　　　　NONE

**PROCEEDINGS:　(IN CHAMBERS)**　<u>Order Re: Motion for Protective Order Re: Remote Deposition of Plaintiff (ECF No. 82)</u>

On February 9, 2022, the parties in this action filed a Joint Stipulation (alternatively "JS" (ECF No. 82-1)) in support of their positions regarding the Motion ("Motion" or "Mot." (ECF No. 82)) filed by plaintiffs Dr. Esam Yusuf Abdulkarim Janahi ("Janahi" or "plaintiff") and Infra Capital Investments PJSC (collectively "plaintiffs"), seeking a protective order compelling defendants to proceed with Janahi's deposition remotely on a mutually agreeable date and time.  (Mot. at 2).  Plaintiffs also submitted the declarations of Janahi ("Janahi Decl."), plaintiffs' counsel Anne Redcross Beehler ("Beehler Decl.") and exhibits, nephrologist Dr. Karine Hadaya ("Hadaya Decl."), and nephrologist Dr. Adil Fadl Obeid ("Obeid Decl.") with an exhibit; defendants submitted the declaration of their counsel Darrell Peter White ("White Decl.") and exhibits.  Having considered the pleadings submitted in connection with the Motion, the Court has concluded that oral argument will not be of material assistance in determining the Motion.  Accordingly, the hearing scheduled for March 2, 2022, is **ordered off calendar**.  <u>See</u> Local Rule 7-15.

By way of background, in September 2021, defendants' counsel indicated to plaintiffs that defendants preferred to take Janahi's deposition in person.  (JS at 5 (citing Beehler Decl. ¶ 3)).  Plaintiffs contend that defendants now "insist, without proof of any prejudice," that they must take plaintiff's deposition in person.  (<u>Id.</u> at 1).

Plaintiffs request a protective order that Janahi's deposition be taken remotely over Zoom.  (<u>Id.</u>).  They explain that plaintiff is a "high risk kidney transplant patient who has been instructed not to travel by multiple doctors," and yet defendants seek to require plaintiff to "travel over 8,000 miles (one way) to sit for a one-day deposition" in defendants' Orange County office.  (<u>Id.</u>; <u>see also</u> Hadaya Decl. ¶¶ 2-3; Obeid Decl. ¶¶ 2-3).  Plaintiffs explain that Janahi underwent a kidney transplant in 2016 due to end-stage kidney failure; is immunosuppressed and takes medication for his immunosuppressive condition; has comorbid conditions including diabetes mellitus, hypertension, and dsyslipidemia; and is overweight.  (JS at 1-2).  Dr. Hadaya and Dr. Obeid state under penalty of perjury that plaintiff is at high risk of serious infections, "particularly of developing severe complications from COVID-19."  (<u>Id.</u>).  These physicians advise that he not travel from the United Arab Emirates, where he currently resides, to the United States for his deposition.  (<u>Id.</u>; <u>see also</u> Hadaya Decl. ¶ 3; Obeid Decl. ¶ 3).

Plaintiffs state that they are ready and willing to proceed expeditiously with the deposition, and have offered to discuss specific dates for a remote deposition. (Id.). According to plaintiffs, defendants insist that the deposition be taken in person and also contend that they are not obligated to demonstrate any prejudice they would face from having to conduct the deposition remotely in order to insist that it be conducted in person. (Id. at 2, 6). In fact, defendants' counsel has asserted that "[t]he Rules entitle [defendants] to the opportunity to depose Janahi in person." (Id. at 6). Plaintiffs also state that during the meet and confer, they offered that defendants "would not need to disclose their exhibits to the Plaintiffs' counsel ahead of the deposition -- in order to avoid the appearance of impropriety." (Id. at 6 (citing Beehler Decl. ¶ 7)). Defendants' counsel rejected this offer. (Id. (citing Beehler Decl. ¶ 8)).

Plaintiffs argue that defendants are attempting to force plaintiff to choose "between his health and his right to pursue this case against those that defrauded him out of millions of dollars" and conclude that he should not be required to be deposed in person "when his doctors and public guidance advise against it, especially where there is an adequate remote alternative." (Id. at 10). They also point out that defendants' concerns about witness coaching "can easily be mitigated by inquiring of the witness who is in the room with him and confirming that he is not in communication with any persons, other than counsel." (Id. at 11). They note that a remote deposition would permit plaintiff to be deposed without having to wear a mask, "thereby allowing a better assessment of his demeanor and better clarity of his voice," and will not impact the discovery schedule in this case, as discovery does not close until June 30, 2022, "leaving the Defendants ample time to conduct [plaintiff's] deposition." (Id. (citing ECF No. 56)).

Defendants respond that plaintiff "filed this lawsuit and doesn't think the rules apply to him." (Id. at 3). They assert that plaintiff "initiated this action knowing full well what his supposed medical conditions would be during a global pandemic," and filed this action a year after the COVID-19 pandemic began, "after the availability of vaccines to lessen the risk of exposure, and with full knowledge that he could be deposed in the forum that he chose, and that he would be called to take part in trial in the district that he chose." (Id.). Defendants contend that Janahi, "a supposed doctor of economics and represented by a global law firm, determined that these were acceptable risks and still filed the instant action," and now seeks to avoid traveling to the United States for an in-person deposition. (Id.). They state that when the deposition was first discussed, plaintiffs' counsel initially indicated that they would check plaintiff's schedule and get back to defendants regarding a date for his deposition. (Id. at 14). Three months later, defendants' counsel again followed up, at which time plaintiffs "raised for the first time [plaintiff's] health concerns amid the ongoing pandemic." (Id. (citing White Decl. ¶ 5)). During the meet and confer, defendants' counsel informed plaintiffs' counsel "that the relationship between the Parties led to legitimate concerns regarding whether [plaintiff] would receive improper coaching or other improper communications from those around him during the deposition." (Id. (citing White Decl. ¶ 10)).

Defendants argue that plaintiffs chose this forum, and state that they are "unaware of any authorities that would allow a Plaintiff the right to refuse his or her deposition in person." (Id. at 14-15 (citations omitted)). They state that they believe this litigation was "needlessly filed by Plaintiff to take advantage of a former associate in a bad situation." (Id. at 15-16). Defendants further contend that plaintiffs have not shown a legitimate need for the remote deposition, as plaintiff was aware of his medical condition and the pandemic when he filed this action. (Id. at 16). They assert that the deposition can take place in a "large conference room," socially distanced, and with everyone masked. (Id.). Defendants also repeatedly state that the case "involve[s] transactions that took place all over the world," and plaintiff "could have brought the action in any of the countries in which the transaction took place," including "any number of . . . foreign courts closer to [plaintiff] which would have required little or no travel on his behalf." (Id. at 16-17).

Defendants also argue that the cases relied on by plaintiffs to justify a remote deposition based on the pandemic, "are from earlier on in the pandemic, when more restrictions were in place preventing and prohibiting travel, and even prior to the availability of vaccines to mitigate the dangers from the COVID." (Id. at 17). Moreover, they note that plaintiff admits in his declaration that he traveled internationally during the pandemic and before the availability of vaccines. (Id. (citing Janahi Decl. ¶ 12)). They state that they are "willing to stipulate to continue the deposition or to stay the case pending [plaintiff's] availability to participate in the action in person." (Id.).

Defendants assert that allowing plaintiff's deposition to be conducted "from the other side of the world would allow [him] to receive 'coaching' during his deposition from other attorneys in the room." (Id. at 3). They note that although plaintiff states that defendant Zuberi is a "convicted fraudster," Zuberi was never charged with fraud, while Janahi "has been embroiled in more fraud lawsuits worldwide than Zuberi has ever been accused of." (Id.). They state that Zuberi -- who has known plaintiff for years -- "believes [plaintiff] will do anything, including abuse the discovery process, to litigate this case" (id. at 3), and that because Zuberi "is familiar with [plaintiff] and with his business practices [he] has very real concerns that [plaintiff] will somehow use a remotely administered deposition to gain an unfair advantage in the litigation." (Id. at 18). Defendants argue that plaintiffs' counsel's assurances that no one would be in the room with plaintiff during his deposition, including his own advisors or personal attorney, "do not address these serious concerns" as defendants have no way of verifying whether others are in the room with plaintiff, or communicating with him through the use of instant messaging, or whether his testimony "is otherwise being improperly influenced by others." (Id. at 3-4, 17). Defendants state that any "possible benefit conferred by seeing Plaintiff remotely without a mask is outweighed by Defendant's inability to see whether [he] is being coached or otherwise improperly influenced by another third party." (Id. at 18).

Additionally, defendants point out that "Plaintiff's counsel already conducted a remote deposition of a third party witness in this case and counsel had to nearly call off the deposition on multiple instances due to recurring technical problems," and the court reporter needed the witness and the attorneys to repeat themselves consistently. (Id.).

Defendants state that "[e]ven after the Court admonished the parties to refrain from . . . unnecessary hyperbole, Plaintiffs continue their smear campaign against Defendants," and also "refused to extend time while Zuberi was hospitalized, misrepresented their express stipulation for more time in connection with the hearing on their Motion for Leave to File a First Amended Complaint, and produced thousands of pages of redundant and duplicative documents, to name but a few examples." (Id. at 4). Defendants submit that they "continue to litigate in good faith and compliance with the Federal Rules of Civil Procedure," engaged in detailed meet and confer processes related to discovery, produced supplemental and amended discovery responses on several occasions, and produced over 1,700 pages of documents. (Id.). They suggest that as an "ultra-high net worth individual," plaintiff could afford to travel "with limited if any exposure to the public at large and the potential COVID variants." (Id.). Defendants conclude that they will "exercise any precautions to mitigate the risk of exposure to any illness while in person, or will otherwise stipulate to continue or to stay the proceedings in this case until Plaintiff is comfortable taking part in person in the litigation that he began and insists on maintaining." (Id. at 18-19).

## Discussion

The Court finds defendants' arguments regarding plaintiff's litigation motives and anticipated deposition conduct to be not only highly speculative, but entirely without merit. In fact, the District Judge recently admonished the parties as follows:

> Before turning to the substance of the Motion, the Court reminds counsel of their obligation to conduct themselves with dignity, courtesy, and integrity as officers of the Court. The tone and language used in the papers border on inappropriate, at times each side accusing the other of engaging in wrongful or untruthful conduct. Most of these arguments are supported by nothing more than hyperbole and exaggeration, lacking any evidentiary support, and none is persuasive.

(ECF No. 78 at 3 (January 25, 2022, Order Granting Motion for Leave to Amend the Complaint)). Here, although defendants acknowledged the District Judge's admonishment, the Court finds defendants' arguments to be yet again highly speculative, antagonistic, and "supported by nothing more than hyperbole and exaggeration," without any evidentiary support. This Court is also not persuaded by such arguments.

Recent district court cases in the Ninth Circuit provide that a court may order depositions to proceed remotely and that "leave to proceed with depositions by remote means should be granted liberally" during the current pandemic. Hernandez v. Bobst Grp. N.A., Inc., 2020 WL 6063143, at *2 (E.D. Cal. Oct. 14, 2020) (collecting cases)). As noted by the court in Hernandez, even prior to the pandemic the Federal Rules of Civil Procedure provided the courts "with the authority to order a deposition to take place by telephone or other remote means, if the circumstances so warrant," and such leave "should be granted liberally." Id. (citations omitted). The party seeking a protective order ordering a remote deposition must first "advance a legitimate reason for seeking a remote deposition." Id. (citation omitted). If that foundational showing is made, the burden shifts to the opposing party "to make a 'particularized showing' that conducting the deposition by remote means would be prejudicial." (Id. (citing United States v. $160,0066.98 from Bank of Am., 202 F.R.D. 624, 629 (S.D. Cal. 2011))).

The Court concludes that plaintiff has demonstrated legitimate reasons for taking his deposition remotely. Even if the number of COVID cases is declining and various restrictions are being loosened, plaintiff has provided evidence of significant health issues that place him at high risk should he become infected. Two of plaintiff's nephrologists advised plaintiff to avoid travel and to take extreme precautionary measures in light of his kidney transplant, immunosuppressed condition, and multiple comorbidities. (Hadaya Decl. ¶¶ 2, 3; Obeid Decl. ¶ 3). Additionally, Dr. Obeid specifically advised plaintiff to "avoid long haul flights" due to his deep vein thrombosis. (Obeid Decl. ¶ 3).

Although defendants state their willingness to conduct plaintiff's deposition with certain precautions in place, of equal or greater concern is the fact that the immunocompromised plaintiff would be required to travel internationally to attend the deposition -- involving time spent in airports and on airplanes -- with the accompanying risks over which defendants have no control.

Defendants have not made a "particularized showing" that a remote deposition would be prejudicial to them. Defendant Zuberi's belief -- based apparently on his personal and/or business relationships with plaintiff -- that plaintiff will somehow be coached during his deposition is nothing more than speculation and an ad hominem attack without substance. Indeed, defendants cite to no concrete evidence that plaintiff has engaged in nefarious tactics during this litigation or that plaintiffs' counsel (from a "global law firm") would either solicit or condone such conduct during plaintiff's deposition. If this is truly a concern, defendants can arrange to have a representative in the room with plaintiff at the time of the deposition -- with proper COVID precautions being taken.

Neither is the Court persuaded by defendants' reference to "technical problems" at a previous deposition. That experience fails to establish prejudice and, as observed by the court in Hernandez, "'there are numerous resources and training opportunities available throughout the legal community to assist [] counsel in the operation and utilization of new technology' for remote depositions, so as to mitigate any future difficulty." Id.

(citations omitted).

Accordingly, plaintiff's Motion (ECF No. 82) for a protective order is **granted**.  **No later than March 4, 2022**, the parties shall meet and confer about a mutually agreeable date and time to conduct plaintiff's remote deposition, to occur **no later than April 8, 2022**.  **No later than March 8, 2022**, plaintiffs shall provide notice to the Court of the date and time for plaintiff's deposition.

The Court anticipates that the parties, and counsel for the parties, working together cooperatively and in good faith, in accordance with the Court's Local Rules, the Federal Rules of Civil Procedure, and the Central District's Civility and Professionalism Guidelines, and with the professionalism expected by the Court from parties in federal cases, will be able to agree to (1) a date, time, and specific location for plaintiff's remote deposition,[1] and (2) reasonable deposition protocols that will mitigate defendants' concerns about surreptitious "coaching" taking place during plaintiff's deposition.

IT IS SO ORDERED.

cc:     Counsel of Record

Initials of Deputy Clerk _____ch_____

---

[1] The Court notes that there is a 12-hour time difference between California and the United Arab Emirates and that it is highly likely that both parties may experience some inconvenience with respect to the deposition timing as a result of this time difference.  The Court emphasizes again that the parties are expected to work together to find ways to minimize such inconvenience.