UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Esam Yusuf Abdulkarim Janahi et al,<br><br>Plaintiffs,<br><br>v.<br><br>Imaad Shah Zuberi et al,<br><br>Defendants. | Case No. 2:21-cv-03975-VAP-PLAx<br><br>**Order DENYING Motion to Dismiss (Dkt. 139)** |

Before the Court is a Motion to Dismiss ("Motion," Dkt. 139) filed by Defendant Willa W. Rao ("Defendant").

After considering all the papers filed in support of, and in opposition to, the Motion, the Court deems this matter appropriate for resolution without a hearing pursuant to Local Rule 7-15. The Court **DENIES** the Motion.

### I. BACKGROUND

The Court detailed the background of this case at length in its previous orders. *See* Dkts. 103, 139. In short, on January 31, 2022, Plaintiffs Dr. Esam Yusuf Abdulkarim Janahi and Infra Capital Investments PJSC, f/k/a "Abu Dhabi Investment House, PJSC" ("Plaintiffs") filed a First Amended Complaint ("FAC") against Defendant Imaad Zuberi, Zuberi's

1

various business entities, and Zuberi's wife, Willa W. Rao, (collectively, "Defendants") based on allegations that Defendants defrauded Plaintiffs out of millions of dollars in investments from 2012-2016.  (Dkt. 79).  As relevant here, the FAC asserted two claims against Defendant Rao for fraudulent transfer and conversion.  On March 28, 2022, Rao filed a motion to dismiss both claims.  (Dkt. 110).  On April 28, 2022, the Court granted the motion only as to the fraudulent transfer claim, explaining that Plaintiffs had failed to plead the elements of fraudulent transfer with sufficient particularity.  (Dkt. 121).  On May 19, 2022, Plaintiffs filed a Second Amended Complaint ("SAC") raising the same claims against Rao.  (Dkt. 131).  On June 2, 2022, Rao filed the instant Motion seeking again to dismiss the fraudulent transfer claim.  (Dkt. 139).  Plaintiffs filed an Opposition to the Motion on June 17, 2022, and Defendant Rao filed a Reply on June 27, 2022.  (Dkt. 144).

## II.     LEGAL STANDARD

### A.   Motion to Dismiss Under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) is read along with Rule 8(a), which requires a short, plain statement upon which a pleading shows entitlement to relief. Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (holding that the Federal Rules require a plaintiff to provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests" (quoting Fed. R. Civ. P. 8(a)(2)).); *Bell Atl. Corp. v Twombly*, 550 U.S. 544, 555 (2007). When evaluating a Rule

12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them— as true and construe them in the light most favorable to the non-moving party. *See Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005); *ARC Ecology v. U.S. Dep't of Air Force*, 411 F.3d 1092, 1096 (9th Cir. 2005); *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994). "The court need not accept as true, however, allegations that contradict facts that may be judicially noticed by the court." *Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

The Ninth Circuit has clarified that: (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively" and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Although the scope of review is limited to the contents of the complaint, the Court may also consider exhibits submitted with the complaint, *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990), and "take judicial notice of matters of public record outside the pleadings," *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988).

### B.   Heightened Pleading Standard under Rule 9(b)

Rule 9(b) imposes a higher pleading standard upon claims sounding in fraud. "Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud 'be specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong.'" *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citations omitted). A party alleging fraud must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "Averments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged." *Id.* (citing *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.1997) (internal quotation marks omitted)).

### III. DISCUSSION

The parties agree that Plaintiffs' fraudulent transfer claim is grounded in fraud. The Court therefore applies the heightened pleading requirements of Rule 9(b) in analyzing the Motion.

Plaintiffs allege one claim for "actual" fraudulent transfer under the California Uniform Voidable Transfers Act ("UVTA") against Defendant Rao. "[A] transfer made by a debtor is fraudulent under the [UVTA] if the debtor made the transfer with the 'actual intent to hinder, delay, or defraud any creditor of the debtor.'" *Filip v. Bucurenciu*, 129 Cal. App. 4th 825, 834 (2005) (citing § 3439.04, subd. (a)(1)). "Whether a conveyance was made with fraudulent intent is a question of fact, and proof often consists of inferences from the circumstances surrounding the transfer." *Id.* The UVTA enumerates eleven factors that courts must consider in determining whether a debtor possessed actual intent:

> (1) Whether the transfer or obligation was to an insider.
> (2) Whether the debtor retained possession or control of the property transferred after the transfer.
> (3) Whether the transfer or obligation was disclosed or concealed.
> (4) Whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
> (5) Whether the transfer was of substantially all the debtor's assets.
> (6) Whether the debtor absconded.

5

   (7) Whether the debtor removed or concealed assets.

   (8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

   (9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

   (10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred.

   (11) Whether the debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor.  Cal. Civ. Code § 3439.04 (West).

Nonetheless, "[n]o single factor necessarily is determinative, and no minimum or maximum number of factors dictates a particular outcome." *In re Ezra*, 537 B.R. 924, 931 (B.A.P. 9th Cir. 2015).

In the previous complaint (the FAC), Plaintiffs alleged that Defendant Rao was involved in a fraudulent scheme perpetrated by Defendant Zuberi from 2013 to 2014, in which Zuberi swindled investors out of $7 million. Under this scheme, Zuberi solicited investments to start a humanitarian initiative called "USCares," but instead took the investment funds, including $3.4 million that Plaintiff Janahi invested, for his personal use.  Zuberi pled guilty in 2019 to various federal charges associated with the USCares scheme.  Plaintiffs alleged in the FAC that "records used in the criminal proceedings" revealed that Plaintiff Janahi's funds were "placed" into a bank

account jointly held by Defendants Zuberi and Rao, and that the Defendants spent the funds on bills and personal investments. (FAC, at 6 ¶ 32). Based on these allegations, Plaintiffs asserted that Rao was jointly liable with Zuberi for "actual" fraudulent transfer under the UVTA.

In the Court's April 28, 2022 Order, the Court dismissed the fraudulent transfer claim against Defendant Rao because Plaintiffs failed to plead the claim with sufficient particularity. *See* Dkt. 121, at 10. Plaintiffs failed to specify in the FAC which Defendants were the alleged debtors and which were the alleged transferees—the Court found it to be unclear who, exactly, was responsible for transferring Janahi's investment funds into Zuberi and Rao's bank account. Additionally, Plaintiffs had not pled facts showing that any of the Defendants acted with the "actual intent to hinder, delay, or defraud Plaintiffs." *Id.* The Court therefore dismissed the claim with leave to amend.

In the SAC, Plaintiffs renew their fraudulent transfer claim against Rao but rely on a different set of allegations. Plaintiffs now allege that on or about January 28, 2016, Plaintiff Infra Capital wired $2.5 million to Defendant West Hollywood 11 LLC ("WeHo 11"), an entity created by Defendant Zuberi, for the purchase and development of property in West Hollywood, California. (SAC, at ¶ 129). Plaintiff Infra Capital and Defendant WeHo 11 had a joint escrow agreement under which Infra Capital received an interest in WeHo 11 in exchange for investing the $2.5 million. *Id.* at ¶ 57. Plaintiff's funds were allegedly deposited into an account belonging to WeHo 11, the alleged debtor. *Id.* Plaintiff's funds were then allegedly "taken

from Weho11" and "placed into accounts controlled by Zuberi, [other Defendants], and/or Rao (i.e., the transferees)." *Id.* at ¶ 130. Plaintiffs identify multiple transactions made from WeHo 11's bank account to bank accounts controlled by Defendants Zuberi and Rao in 2016. Plaintiffs allege that the transfers from WeHo 11 to Defendants "were made with actual intent to hinder and defraud Infra Capital," and Plaintiffs identify several of the UVTA "badges of fraud" present in Defendants' actions. *Id.* Namely, they assert that:

> WeHo 11 had no other assets other than the $2.5 million investment from Infra; Zuberi was an insider of WeHo 11 when Infra's funds were transferred; said transfers were concealed and not disclosed to the Plaintiffs; Infra's funds were transferred to accounts associated with Zuberi, the Avenue Defendants, and Rao; and, in 2020, Zuberi can-celled WeHo 11. *Id.* at ¶ 132.

Defendant Rao moves to dismiss the fraudulent transfer claim on two grounds. First, she argues that the amended claim is outside the scope of the Court's leave to amend because Plaintiffs "completely abandoned" their original theory of liability relating to the USCares investment scheme. (Motion, at 4). Second, Defendant asserts that Plaintiffs have once again failed to state a plausible claim for fraudulent transfer.

**A. Whether the Claim Exceeds the Scope of Amendment**

Federal Rule of Civil Procedure 15(a) provides that courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15. "Whether to grant leave to amend is committed to the sound discretion of the district court." *United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't*, AFL-CIO, 770 F.3d 834, 845 (9th Cir. 2014) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

Defendant avers that Plaintiffs should not be permitted to introduce a new theory of liability for the fraudulent transfer claim. The Court disagrees. The Court previously granted leave to amend because Plaintiffs argued in the Opposition to the first Motion to Dismiss that they had additional facts pertaining to Defendant Rao. (Dkt. 121, at 11 n.3). The Court never limited Plaintiffs' amended claims to facts involving only the USCares fraud scheme. Indeed, Plaintiffs specifically indicated they would allege additional facts related to the West Hollywood investment, and the Court did not prohibit them from doing so. *See* Dkt. 111, at 19. There is simply no basis for limiting the scope of Plaintiffs' amended claim in the way that Defendant suggests. *Contra Lizza v. Deutsche Bank Nat'l Tr. Co.*, 714 F. App'x 620, 622 (9th Cir. 2017) (upholding a court's finding that a complaint exceeded the scope of amendment, where the order only allowed plaintiffs "to make more specific" certain claims, and "not to assert a wholly new theory of liability.").

Moreover, the "new" claim related to the West Hollywood property is not entirely novel; the FAC included allegations against Zuberi and other Defendants for fraudulent transfer based on the transactions between Infra

Capital and WeHo 11.  See FAC, at ¶ 18.  Although Defendant Rao was not specifically mentioned with respect to the WeHo 11 allegations, the theory of liability against her is substantially the same as with the USCares scheme.  Rao's involvement in either scenario stems from receiving Plaintiffs' funds into bank accounts controlled by her and her husband, Zuberi.  This is therefore not a case where the amendments "drastically changed [plaintiff's] litigation theory."  *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) (affirming denial of leave to amend).  Nor is this a case where the amended claims "would . . . require[] defendants to . . . undertake[], at a late hour, an entirely new course of defense."  *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (affirming denial of leave to amend).

To that end, the cases Defendants cite are inapposite because they concern amended claims that "advance[d] different legal theories and require[d] proof of different facts," thereby causing substantial prejudice to the defendants.  See *AmerisourceBergen Corp.*, 465 F.3d 946; *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990).  For example, in one case Defendants rely upon, *Jackson v. Bank of Hawaii*, plaintiff's amended claim would have required defendant to relitigate an underlying lawsuit with its insurer to determine if the insurer had to indemnify the defendant.  *Jackson*, 902 F.2d at 1387.  Clearly, no such extreme circumstances are present here.

To the extent Defendant Rao expresses concern about the looming discovery deadlines in this case, the Court notes that she has not identified

what discovery she would need to undertake to defend against the amended claim. Defendant Rao can move to modify the scheduling order if she determines that additional discovery is necessary. The Court also notes that it is currently considering a Motion to Withdraw Representation filed by Defendant Zuberi's counsel, so there may well be delays in this case going forward. See Dkt. 146.

**B.   Whether the Fraudulent Transfer Claim is Insufficiently Pled**

Defendant also argues that Plaintiffs have failed to state a claim for fraudulent transfer. Specifically, Defendant asserts that the corporate structure of WeHo 11 defeats Plaintiffs' claim because WeHo 11, the alleged debtor, is a joint venture owned by Plaintiff Infra Capital (the alleged creditor) and Defendant Zuberi (the alleged transferee). Since WeHo 11 is comprised of both the alleged creditor and transferee, Defendant contends it could not have fraudulently transferred Plaintiff's funds because it would have been, effectively, transferring property to itself.

The parties first dispute who, exactly, the debtor-transferor could be in this case. The SAC states that WeHo 11 is the debtor-transferor, and that Plaintiffs' funds "were taken from WeHo 11" and placed into Zuberi and Rao's personal bank account. (SAC, at 23 ¶ 129-130). Defendant Rao contends that Zuberi should actually be the legal transferor under this theory, because it was he who allegedly took the funds and placed them into his own account. The Court does not find this argument persuasive. It is axiomatic that a corporate entity cannot make a transfer on its own, without some person acting on the entity's behalf. See *Bank of U.S. v. Dandridge,*

25 U.S. 64, 92, 6 L. Ed. 552 (1827) ("A corporation will generally act by its agents; but those agents have no self-existing power."). By alleging that WeHo 11 fraudulently transferred the funds, Plaintiffs clearly imply that a person or agent acting on WeHo 11's behalf made the fraudulent transfer. The parties agree that Defendant Zuberi was a joint owner of WeHo 11. It is therefore plausible that WeHo 11 legally acted as the transferor in placing the funds into Defendant Rao and Zuberi's bank account, with Zuberi acting as an agent of Weho 11 to do so. Plaintiffs sufficiently identified WeHo 11 as the debtor-transferor in the SAC.

The Court is also not persuaded by Defendant's argument that a fraudulent transfer could not have occurred because of the parties' joint ownership of WeHo 11. Defendant does not cite any authorities that limit fraudulent transfer claims due to an entity's corporate structure. Defendants' argument seems to blur the distinction between WeHo 11's corporate funds, on the one hand, and Defendant Zuberi and Rao's personal funds, on the other. Contrary to Defendant's assertion, this is not a situation where "Zuberi . . . simply transferred money to himself" because the money in WeHo 11's account was not his—it was the company's. (Reply, at 3). Although the parties jointly held the LLC for the purpose of investing in real estate, Plaintiff Infra Capital never authorized Zuberi to take its investment in the company and transfer it to Zuberi's personal account. *See, e.g., Morgan Stanley High Yield Sec. Inc. v. Jecklin*, No. 205CV01364RFB PAL, 2019 WL 1440258, at *12 (D. Nev. Mar. 31, 2019), amended, No. 205CV01364RFB PAL, 2020 WL 2770681 (D. Nev. May 28, 2020) (finding a fraudulent transfer occurred where a corporate agent

approved the transfer of corporate funds to his own personal bank account, in order to avoid his financial obligations to plaintiffs).

Defendant also argues that Plaintiff failed to plead the elements of fraudulent transfer sufficiently. To prevail on a claim for actual fraudulent transfer, a plaintiff must show that: 1) it "has a right to payment from debtor. . . ." 2) "that debtor transferred property to defendant;" 3) "that debtor transferred the property with the intent to hinder, delay, or defraud one or more of its creditors;" 4) "that plaintiff was harmed;" and 5) "that debtor's conduct was a substantial factor in causing plaintiff's harm." (Judicial Council of California Civil Jury Instruction 4200).

Plaintiffs have sufficiently stated a claim for fraudulent transfer based on the allegations in the SAC. Plaintiffs specify that Infra Capital transferred $2.5 million to WeHo 11 for purposes of an investment in property in West Hollywood, California. (SAC, at 23 ¶23). After the payment was made, Zuberi, as an agent and insider of debtor WeHo 11, began withdrawing funds from WeHo 11 and depositing the funds into an account held by himself and Rao (the transferees). (*Id.* at 23-24, ¶¶26-9). As discussed *supra,* Plaintiffs identify the dates and amounts of such transfers, as well as the badges of fraud they allege are present in Defendant's actions. (*Id.*). And, unlike for the deficient fraudulent transfer claim in the FAC, Plaintiffs have now identified the debtors, creditors, and transferees as relevant to their claim. *See* Dkt. 121, at 10 (dismissing fraudulent transfer claim and noting that "Plaintiffs failed to specify in their FAC which Defendants are the alleged debtors and which are the alleged transferees). The SAC identifies

Defendant Rao as a transferee of the funds in question.  *See* SAC, at 23 ¶ 19-20).  The UVTA clearly "permits defrauded creditors to reach property in the hands of a transferee," which would make Rao liable for the transferred funds.  *Mejia v. Reed*, 31 Cal. 4th 657, 663, 74 P.3d 166, 169 (2003).

The Court therefore **DENIES** Defendant's Motion to Dismiss as to Plaintiffs' fraudulent transfer claim.

### IV.   CONCLUSION

The Court **DENIES** the Motion to Dismiss.  Defendant is ordered to file an Answer to the fraudulent transfer claim within 14 days of this Order.

DATED: July 15, 2022

　　　　　　　　　　　　　　　　　　　　 VIRGINIA A. PHILLIPS
　　　　　　　　　　　　　　　　　　　　 United States District Judge